# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MYRLANDE B. STECKER,**

      **Plaintiff,**

-vs-                                                                    Case No. 6:08-cv-192-Orl-28DAB

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument[1] on review of the Commissioner's administrative decision to deny Plaintiff's applications for a period of disability, Disability Insurance Benefits, and Supplemental Security Income under the Social Security Act. For the reasons set forth herein, it is **ORDERED** that the decision is **REVERSED and the matter REMANDED** for additional consideration, as set forth below.

### *PROCEDURAL HISTORY*

Plaintiff filed applications for a period of disability, disability insurance benefits, and Supplemental Security Income on April 13, 2006, alleging disability beginning on February 12, 2006 (R. 51-53, 272-75). These applications were denied initially and upon reconsideration. Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ") (R. 322-42) and, on August 22, 2007, the ALJ issued an unfavorable decision (R. 11-21). Plaintiff filed a Request for Review with the Appeals Council, which was denied (R. 6-9). The ALJ's decision is thus the final

---

[1]Although Plaintiff requested oral argument, in view of the disposition herein the Court concludes that argument is unnecessary.

decision of the Commissioner.[2] This action timely followed (Doc. No. 1) and the parties have consented to the jurisdiction of the United States Magistrate Judge. The matter is fully briefed and ready for disposition.

## *NATURE OF CLAIMED DISABILITY*

Plaintiff claims disability from February 12, 2006, due to a blood clot in the brain and residual impairment, brain surgery, and resulting pain, concentration and memory issues (R. 57).

### *Summary of Evidence Before the ALJ*

Plaintiff was born in 1962 (R. 51). She has a high school education (R 63) and past relevant work as a certified nursing assistant (R 58, 326).

In the interests of privacy, Plaintiff's medical history, which is detailed in the administrative record, need not be repeated here, except as necessary to address Plaintiff's objections. By way of summary, in February 2006, two weeks after giving birth following a high risk pregnancy (R. 207), Plaintiff was taken to the emergency room for evaluation of intracerebral hemorrhage (R. 120-122). On February 15, 2006, a right frontal craniotomy, brain biopsy and evacuation of a intracerebral hematoma was performed (R 114-115). Following the surgery, Plaintiff underwent two months of rehabilitation at Sea Pines Hospital for treatment of left hemiparesis (R 123-153). While Plaintiff improved, upon discharge, she was assessed with left sided hemiparesis secondary to right craniotomy, hypertension, seizures, gestational diabetes mellitus, sickle cell trait, depression, headaches, lumbar radiculopathy, otitis externa and allergic rhinitis (R 126). Therapist notes dated March 13, 2006, indicate that Plaintiff "will require assistance at home with childcare and ADL for

---

[2]Plaintiff asserts in her brief that she was awarded benefits on a second application in 2008. As this is not of record in this case, it is of no moment to the issues before this Court.

-2-

multi-tasking and problem solving." (R. 132). It was felt that she continued to need strategies for pacing and endurance conservation throughout the day. *Id.*

On April 6, 2006, Plaintiff was seen by Jay Olsson O.D. of the Interventional Spine Institute of Florida (R 204-206). Plaintiff reported headaches and bilateral wrist pain, and noted a decrease in her ability to keep a train of thought. Dr. Olsson opined that Plaintiff's pain had a "detrimental impact on concentration, mentation, word processing and mood." *Id.* She was placed on medications. On return visit, she displayed some difficulties with memory, concentration and orientation (R. 202). She could not identify her location, the city or state. She was unable to add change to make forty one cents, but was oriented to her name, time of day, month and year. She continued to see Dr. Olsson and continued to complain of headaches (R. 197, 193, 189, 186). On mental status exam on July 5, 2006, Plaintiff could not identify her current location, could not reproduce drawings and was unable to draw a clock correctly (R. 184). Dr. Olsson concluded that her "higher cognitive function was diminished, with concrete answers given to abstract questions." *Id.* This problem persisted through 2006 (R. 312).

Plaintiff was also seen in follow up by neurologist Dr. Dandapani (R. 231-33). On examination, she displayed mild left hemiparesis in her left arm, and problems with fluency of her speech and hesitation. Treatment was conservative. Plaintiff's headaches appeared to respond to medications.

In April 2007, Plaintiff was a passenger in a rear end collision. A cervical MRI taken April 26, 2007 showed disc herniation at C4-5 (R. 314). Treatment records show she reported more frequent headaches since the accident (R. 318-21).

The administrative record contains several reports from non-examining state agency reviewers. On August 8, 2006, Theodore Weber, Psy. D. completed a Mental Residual Functional Capacity Assessment (R. 162-65). Dr. Weber opined that the Plaintiff was moderately limited in her ability to understand and remember detailed instructions; moderately limited in her ability to carry out detailed instructions and in her ability to maintain attention and concentration for extended periods of time; and also moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Weber opined that the Plaintiff would be able to complete simple tasks in an 8-hour workweek.

On November 13, 2006, Ann Adams, Psy. D. completed a Mental Residual Functional Capacity Assessment (R 248-51). Dr. Adams opined that Plaintiff was moderately limited in her ability to remember locations and work-like procedures, to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to sustain an ordinary routine without special supervision and to make simple work-related decisions. Dr. Adams opined that Plaintiff was moderately limited in her ability to get along with coworkers, to respond appropriately to changes in the work setting, to be aware of normal hazards and take appropriate precautions and to travel in unfamiliar places or use public transportation.

Plaintiff appeared and testified at her hearing regarding her pain and limitations. No Vocational Expert testified.

Based on the above, and treatment records that showed minimal exertional impairments, the ALJ found that Plaintiff had the severe impairments of status-post brain surgery and diabetes (R. 16), and had the Residual Functional Capacity ("RFC") to perform a "wide range of sedentary work." (R. 17). Specifically, the ALJ determined that Plaintiff can lift and carry ten pounds frequently and fifteen pounds occasionally. She can sit for six to eight hours per eight hour time frame and stand and walk for two to four hours per eight hour time frame. The ALJ found Plaintiff's allegations of limitations to be "not entirely credible." (R. 19). The ALJ determined that Plaintiff was unable to perform any of her past relevant work, but based on an exertional capacity for the full range of sedentary work, and Plaintiff's age, education, and work experience, the ALJ applied Medical-Vocational (GRID) rule 201.28, and found Plaintiff to be not disabled (R 20).

### *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v.*

*Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## *ISSUES AND ANALYSIS*

Plaintiff contends that the ALJ's decision is in error as: 1) the ALJ failed to obtain the testimony of a Vocational Expert, in view of Plaintiff's non-exertional limitations and 2) the ALJ's credibility finding is not supported by substantial evidence and is not consistent with proper legal standards. Because the Court finds that the ALJ erred in failing to recognize *any* non-exertional limitations, which implicates the credibility finding as well as the decision not to use a Vocational Expert, the case must be reversed.

**The Five Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her

from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Here, the ALJ determined this case at the fifth step of the evaluation, but the Court finds significant error at step two.

At step two of the analysis, the ALJ found that Plaintiff had the severe impairments of status post-brain surgery and diabetes, but determined that:

> The claimant's medically determinable mental impairments, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.

(R. 17).

The ALJ concluded that Plaintiff had only mild limitations in the functional area of activities of daily living; the functional area of social functioning; and in the functional area of concentration, persistence or pace; and no limitation in the functional area of episodes of decompensation. *Id.* The ALJ sets forth no record support for this finding, and the Court finds that substantial evidence does not support this conclusion.

At step two, Plaintiff must show that she has an impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). As the Commissioner states in his brief, "Basic work activities are the abilities and aptitudes necessary to do most jobs, *i.e.,* the ability to understand, remember, and carry out simple instructions; use of judgment; the ability to respond appropriately to supervision, coworkers, and usual work situations, and deal with changes in a routine work setting." 20 C.F.R. §§ 404.1521. 416.921. A claimant's burden at step two is mild, and the claimant need only show that her "impairment is not so slight and its effect is not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986).

Here, Plaintiff has established a documented concentration and cognitive impairment, due to residuals of her brain surgery. There is no medical evidence to the contrary. Indeed, the ALJ

acknowledged that while Plaintiff's physician did not complete a function by function analysis of her RFC, he opined that Plaintiff's pain had a detrimental impact upon her concentration, mentation, word processing, and mood, in spite of her compliance with a diverse regimen of medications prescribed to control her symptoms (R. 19). Both non-examining state agency practitioners found Plaintiff to be moderately limited in a host of work-related areas, including those directly related to basic work activities, and concentration, persistence and pace. There is simply no record support for a finding of only mild limitations in this functional area.

As for activities of daily living, the ALJ found only mild limitation, and stated that Plaintiff "testified that she leads and [sic] essentially normal life and that she cares for three children, including the performance of cooking and cleaning for the children." (R. 19-20). This statement is factually unsupported. Indeed, the testimony was quite the opposite. Plaintiff testified that she has three children (R. 325), and that she still suffers pain and limitations from her stroke (R. 330, 338, 341). She testified that the baby gets up at 7 am, but she gets up at 9:30 (R. 331). She testified that "I have somebody, you know, to help me" (R. 332) and "they prepare breakfast for me" (R. 332). In response to the question, "do you take care of the seven year old and the five year old," Plaintiff answered: "No, I cannot. My husband." (R. 332-33). She does not pick up the baby (R. 335), she does not drive (R. 338), and she needs to rest frequently throughout the entire day (R. 340-341). This is consistent with her disability reports of record (*see* R. 66-67 – noting that she can not do usual daily activities, including cleaning, cooking and child care, because of dizziness; and R. 69-76 – noting her inability to care for her children or perform most daily activities without help). No evidence supports a conclusion that Plaintiff testified that she leads an "essentially normal life." The ALJ erred in failing to consider Plaintiff's non-exertional, cognitive impairment at step two.

It appears that the Commissioner contends that any such error is harmless, as "the entirety of the medical evidence of record supports the ALJ's finding that Plaintiff does not have any significant nonexertional limitations, and retained the RFC for sedentary work." (Brief at 11). This argument ignores the sequential review process. In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled. *Id.*, 985 F.2d at 534. Here, the ALJ found that Plaintiff had a "severe" impairment of "status-post brain surgery," but completely failed to articulate the nature or effect of this impairment other than an implicit finding that it resulted in no non-exertional limitations. Given that the ALJ acknowledged (and apparently credited) treatment records establishing Plaintiff's concentration and orientation difficulties, diminished fluency and speed of speech, headaches, pain and weakness, and exacerbation of her symptoms after her automobile accident (R. 19), and given the lack of any medical or opinion evidence to the contrary, the Court finds no basis to conclude that such a finding, at step two *or* in formulating the RFC at step four - is supported by substantial evidence on this record. The matter must be remanded for consideration and evaluation of the effect of the cognitive impairment.

Plaintiff contends that the ALJ erred in failing to obtain vocational expert testimony and also erred in failing to properly evaluate Plaintiff's credibility. Both arguments are premised on the

contention that Plaintiff had significant non-exertional limitations. As the Court holds that remand for consideration of Plaintiff's non-exertional limitations is required, these objections are largely moot. Any conclusion regarding the necessity of a Vocational Expert is premature, absent a new finding as to Plaintiff's residual functional capacity that accounts for all the impairments, and the Commissioner should also re-evaluate Plaintiff's credibility on remand, in light of the above discussion.

The Court reminds the parties that nothing contained herein is meant to imply that the ALJ should reach a particular conclusion regarding the ultimate finding with respect to disability. The Court holds only that the ALJ erred in not considering Plaintiff's cognitive limitations arising from her brain surgery at step two, and that error can only be remedied by reversing the decision and remanding for that consideration.

## *CONCLUSION*

For the foregoing reasons, the Commissioner's decision was not made in accordance with proper legal standards and is not supported by substantial evidence, and is therefore **REVERSED** under sentence four of 42 U.S.C. § 405(g) and the case is **REMANDED** for additional proceedings not inconsistent with this opinion. The Clerk is directed to enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Orlando, Florida on March 6, 2009.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record